1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                      SOUTHERN DISTRICT OF CALIFORNIA

10

11   ADRIAN ALBERTO ZAMORA,            Case No.:  24-CV-236 TWR (DEB)

12                         Plaintiff,   **ORDER GRANTING DEFENDANT'S**
                                        **UNOPPOSED MOTION TO**
13   v.                                 **DISMISS, GRANTING**
                                        **DEFENDANT'S REQUEST FOR**
14   BRIDGECREST CREDIT COMPANY,        **JUDICIAL NOTICE, AND**
     LLC, an agent and servicer for Carvana **DISMISSING ACTION WITH**
15   LLC,                               **PREJUDICE**

16                        Defendant.

17
                                        (ECF No. 4)
18

19          Presently before the Court is Defendant Bridgecrest Credit Company, LLC's

20   unopposed Motion to Dismiss Complaint (ECF No. 4 ("Mot.")).  Also before the Court is

21   Defendant's Request for Judicial Notice.  (ECF No. 4-1 ("RJN").)  The Court took this

22   matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1).

23   (*See* ECF No. 6.)   Having carefully considered Plaintiff's Complaint (ECF No. 1

24   ("Compl.")), Defendant's arguments, and the relevant law, the Court **GRANTS**

25   Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) and

26   **GRANTS** Defendant's Request for Judicial Notice.

27   / / /

28   / / /

1

# BACKGROUND[1]

## I.      The Conditional Sale Contract and Security Agreement

On September 9, 2022, Plaintiff entered into a "consumer credit transaction" with Bridgecrest Credit Company, LLC ("Bridgecrest"), as agent and servicer for Carvana, LLC, in connection with the purchase of a used 2022 Tesla Model 3 (the "Vehicle").  (*See* Compl. ¶ 5; ECF No. 1-2, Ex. 2; ECF No. 4-1 at 10–17 (the "Contract").)  Under the terms of the Contract, Plaintiff agreed to make 71 monthly payments, beginning on October 9, 2022.  (*See* Contract at 1.[2])  The "Total Sale Price" to Plaintiff, including his down payment and monthly payments, is $90,481.46.  (*Id.*)  Defendant Bridgecrest, the agent and servicer for Carvana, LLC, mandated a down payment at the time of purchase.  (*See* Compl. ¶¶ 2, 5.)  Plaintiff contends that Defendant violated Section 1605(a) of the Truth in Lending Act ("TILA") by requiring him to make a down payment.  (*See id.* ¶ 8.)

The total "Finance Charge" to Plaintiff under the Contract is $17,908.33.  (*See* Contract at 1; *see also* Compl. ¶ 9.)  The total "Finance Charge" does not include charges related to car insurance, the exclusion of which Plaintiff contends also violated Section 1605 of the TILA.  (*See* Compl. ¶¶ 9–10.)  Defendant further required Plaintiff to purchase car insurance before it delivered the Vehicle, which Plaintiff likewise contends violated Section 1605(b) of the TILA.  (*See id.* ¶ 10.)  Defendant also "willfully and knowingly failed to provide information about the finance charge components and Plaintiff's federal right to rescind within three days, violating 15 U.S.C. § 1611."  (*Id.* ¶ 11.)  With respect to the right to rescind, Plaintiff explains that "Defendant failed to notify or provide Plaintiff with federally required information regarding the right to rescind from the transaction, as

---

[1]      For purposes of the Motion to Dismiss, the Court "must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn from them," and construe the Plaintiffs' operative pleadings "in the light most favorable to the plaintiff."  *See Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

[2]      Citation to pages in the Contract refer to the pages appearing in the bottom right-hand corner of each page of the Contract, which itself appears at pages 10–17 in ECF No. 4-1.

mandated by 15 U.S. Code § 1635 and 12 CFR § 1026.23." (*Id.* ¶ 6.)  He "was not furnished with the federally required forms for exercising the right to rescind, as required by law." (*Id.* ¶ 7.)

## II.  Communications Between Plaintiff and Defendant

On September 12, 2022, Plaintiff sent Defendant the first of a series of nine letters.[3] (*See* Compl. ¶¶ 13–32.)  Plaintiff's first letter purported to reject the arbitration agreement contained in the Contract, rescind the Contract, revoke power of attorney, and demand that Defendant refund his down payment.  (*See id.* ¶ 13; *see also* ECF No. 1-2, Ex. 1.)  Plaintiff's second letter, dated September 19, 2022, consisted of a "Cease and Desist" notice and a "Bill of Particulars" purporting to charge Defendant $45,716.66–$1,000 for Defendant's violation of 15 U.S.C. § 1605; $1,000 for Defendant's violation of 15 U.S.C. § 1605(b); $1,000 for Defendant's violation of 15 U.S.C. § 1611; $6,900 for Defendant's violation of 15 U.S.C. § 1635; and $35,816.66 for Defendant's violation of 15 U.S.C. § 1640.  (*See* Compl. ¶ 16; *see also* ECF No. 1-2, Ex. 2.)  Plaintiff's third letter, dated September 21, 2022, comprised a "Debt Validation Letter" and a further "Cease and Desist" notice.  (*See* Compl. ¶ 18; *see also* ECF No. 1-2, Ex. 3.)  Defendant responded to one of Plaintiff's letters.[4]  (*See* Compl. ¶ 21.)

On October 31, 2022, Plaintiff sent Defendant a fourth letter consisting of a "Notice of Fault and Opportunity to Cure."  (Compl. ¶ 22; *see also* ECF No. 1-2, Ex. 4.)  Plaintiff's fifth letter, dated November 10, 2022, comprised a "Notice of Default and Consent to Judgment," which purported to find Defendant in default for its failure to pay the $45,716.66 previously demanded in his "Bill of Particulars."  (*See* Compl. ¶ 25; *see also* ECF No. 1-2, Ex. 5.)  Plaintiff's sixth letter to Defendant, dated December 14, 2022,

---

[3]     Some letters are addressed to "Carvana Legal," while others are addressed to Defendant Bridgecrest.  (*See generally* ECF No. 1-2.)

[4]     Plaintiff has not provided the Court with a copy of Defendant's response.  (*See generally* ECF No. 1-2.)

purported to contain a "sworn Affidavit of Truth in the form of Notice of Fault and Opportunity to Cure." (Compl. ¶ 26; *see also* ECF No. 1-2, Ex. 6.[5])  Plaintiff's seventh letter to Defendant, dated December 27, 2022, again contained a "Notice of Default and Consent to Judgment." (Compl. ¶ 29; *see also* ECF No. 1-2, Ex. 7.)  Plaintiff's eighth letter, also dated December 27, 2022, comprised a "Notary Certificate of Dishonor and Non-Response." (Compl. ¶ 30, *see also* ECF No. 1-2, Ex. 8.)  Finally, on January 6, 2023, Plaintiff sent Defendant a ninth and final letter, again, consisting of a "Notary Certificate of Dishonor and Non-Response." (Compl. ¶ 31; *see also* ECF No. 1-2, Ex. 9.)

## III.    Procedural History

Plaintiff initiated this action against Defendant on February 5, 2024, asserting seven claims for relief for violations of the TILA, the Fair Credit Reporting Act ("FCRA"), Fair Debt Collection Practices Act ("FDCPA"), and associated regulations as well as various state law claims. (*See generally* Compl.)  Defendant filed the instant Motion to Dismiss on April 8, 2024, and on April 16, 2024, the Court issued a briefing schedule requiring Plaintiff to file his opposition to the Motion on or before July 11, 2024. (*See* ECF No. 5.)  Having failed to receive Plaintiff's opposition, on July 17, 2024, the Court *sua sponte* granted Plaintiff an extension of time—until August 8, 2024—to file any opposition and took the Motion under submission on the papers pursuant to Civil Local Rule 7.1(d)(1). (*See* ECF No. 6.)  The Court warned Plaintiff, pursuant to the undersigned's Standing Order for Civil Cases, that "*Plaintiff's failure to file a timely opposition to the Motion may be construed as 'consent to the granting of the motion pursuant to Civil Local Rule 7.1(f)(3)(c).'*  Accordingly, should Plaintiff fail to file an opposition on or before August 8, 2024, the Court may grant Defendant's Motion and dismiss Plaintiff's Complaint." (*Id.*

---

[5]    In Exhibits 6–9, Plaintiff signs his communications "Attorney in Fact." (*See* ECF No. 1-2, Exs. 6–9.)  The Court has no record of an attorney admitted to practice before this District under the name "Adrian Alberto Zamora," and Plaintiff has not represented to the Court that he is an attorney.  Plaintiff is reminded that the unauthorized practice of law is a crime in California.  *See* Cal. Bus. & Prof. Code § 6125.

at 2 (emphasis in original).)  As of the date of this Order, the Court has not received either a timely or untimely opposition from Plaintiff.  (*See generally* Docket.)

## LEGAL STANDARDS

### I.    Rule 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'"  *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is

entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "A district court does not err in denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991)).

Courts have a duty to construe a pro se litigant's pleadings liberally. *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). In giving liberal interpretation to a *pro se* complaint, however, a court may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## II.    Rule 9(b)

Federal "Rule [of Civil Procedure] 9(b) requires that, when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* (alteration in original) (internal quotation mark omitted) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Id.* (internal quotation marks omitted) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

/ / /
/ / /
/ / /
/ / /

# DISCUSSION

## I.   Defendant's Request for Judicial Notice

"Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)).  "A fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'"  *Id.* (quoting Fed. R. Evid. 201(b)(1)–(2)).  "Accordingly, '[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.'"  *Id.* (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).  "But a court cannot take judicial notice of disputed facts contained in such public records."  *Id.* (citing *Lee*, 250 F.3d at 689).

Defendant requests that the Court judicially notice the Complaint it filed against Plaintiff in the Superior Court of California, County of San Diego, on January 8, 2024 (the "State Court Complaint") and the exhibit attached to it.  The exhibit to the State Court Complaint is a copy of the full text of the Contract.  (*See* ECF No. 4-1 at 10–17.)   First, "[p]roper subjects of judicial notice when ruling on a Rule 12 motion include court documents already in the public record and documents filed in other courts; records of state agencies; and publicly accessible websites."  *Minor v. FedEx Off. & Print Servs., Inc.*, 78 F. Supp. 3d 1021, 1027 (N.D. Cal. 2015) (internal citations omitted).  Because both the State Court Complaint and its exhibit are already available as documents filed in another court, the Court finds both are properly subject to judicial notice.  *See id.*  The Court, therefore, judicially notices the State Court Complaint for the limited purpose of determining the claim that Defendant has filed against Plaintiff in the Superior Court of California, County of San Diego.

Second, the Court finds that the full text of the Contract that appears as the exhibit to the State Court Complaint has been incorporated by reference into Plaintiff's Complaint in this action.  "[U]nder the 'incorporation by reference' doctrine, [courts may] take into

account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999)).  "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken–or doom–their claims." *Khoja*, 899 F.3d at 1002 (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)).  Consequently, "a defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)).  The Ninth Circuit has "extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel*, 183 F.3d at 986 (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)).

   "However, if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Khoja*, 899 F.3d at 1002.  "Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims." *Id.* at 1002–03 (citing *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156–57 (2d Cir. 2006); *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 995–96 (S.D. Cal. 2005)).  "For this same reason, what inferences a court may draw from an incorporated document should also be approached with caution." *Id.* at 1003.  Although "a court 'may assume [an incorporated document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6),'" *id.* (alteration in original) (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)), "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.*

Here, the Contract forms the basis of Plaintiff's Complaint, but Plaintiff failed to attach the entirety of the Contract to his Complaint and instead attached only the first page of the Contract.[6]  (*See* ECF No. 1-2, Ex. 2.)  Because Plaintiff has not filed an opposition and, therefore, does not dispute the authenticity of the Contract attached to the State Court Complaint, the Court properly may consider it as being incorporated by reference into Plaintiff's Complaint.

## II.   Defendant's Motion to Dismiss Under Rule 12(b)(6)

Defendant moves to dismiss each of the seven claims in Plaintiff's Complaint for: (1) violation of the TILA; (2) violation of the FCRA; (3) violation of the FDCPA; (4) breach of contract; (5) fraudulent inducement; (6) violation of "Consumer Rights under 15 U.S.C. Chapter 41;" and (7) violation of "Notice of Rescission under 15 U.S.C. § 1635." (*See* Compl. at 7.)  Preliminarily, the Court concludes Plaintiff's Complaint lacks sufficient factual matter that, accepted as true, would permit him to state a claim for relief that is plausible on its face.  *See Iqbal*, 556 U.S. at 678.  Plaintiff offers only vague and conclusory assertions of misconduct that do not raise the right to relief above the speculative.  Indeed, even under the most liberal construction, Plaintiff's Complaint patently seeks title to a vehicle—lien-free—without paying off the loan, as well as $45,716.66, neither of which remedies has any basis in fact or law.  (*See* Compl. ¶¶ 15, 17, 24, 28.)

/ / /

/ / /

/ / /

/ / /

/ / /

---

[6]     Plaintiff is reminded that despite his pro se status, pursuant to Federal Rule of Civil Procedure 11(b)(3), "[b]y presenting to the court a pleading . . . an unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" Available sanctions include monetary penalties.  *See* Fed. R. Civ. P. 11(c)(4).

**A.      Plaintiff's First, Sixth, and Seventh Causes of Action Based on the Truth in Lending Act**

Because Plaintiff's first, sixth, and seventh claims all appear to sound under the TILA and related regulations, the Court considers these claims together.[7]

### 1.      Plaintiff's First Cause of Action for Violation of the TILA

Plaintiff alleges that Defendant violated 15 U.S.C. § 1605 in three ways: (1) by requiring Plaintiff to make a down payment; (2) by failing to mention the requirement to include car insurance in the Contract's "finance charge;" and (3) by requiring Plaintiff to purchase car insurance before the car was delivered to him.   (*See* Compl. ¶¶ 8–10.) Defendant argues that Plaintiff has failed to allege facts showing that Defendant has violated § 1605.  (*See* Mot. at 4–5.)  The Court agrees with Defendant.

As a preliminary matter, it appears that the TILA does not apply under the facts of this case.  Section 1603 provides, "[t]his subchapter does not apply to the following: . . . (3) Credit transactions, other than those in which a security interest is or will be acquired in real property, or in personal property used or expected to be used as the principal dwelling of the consumer and other than private education loans . . ., in which the total amount financed exceeds $50,000."  15 U.S.C. § 1603(3).  Here, the Contract shows that the total "Amount Financed" to purchase the used Tesla is $65,673.13.  (*See* Contract at 1; Compl., Ex. 2.)  Because the amount financed exceeds $50,000 and does not relate to private education loans, a security interest in real property, or a security interest in personal property to be used as the consumer's principal dwelling, the TILA is inapplicable.  *See* 15 U.S.C. § 1603(3); *see also, e.g.*, *Mims v. Capital One Auto Fin.*, No. 23-cv-1567, 2024 WL

---

[7]      Plaintiff's first claim for "Violation of Truth in Lending Act (TILA)" and sixth claim for "Violation of Consumer Rights" are broadly identified as arising under "15 U.S.C. Chapter 41."  (*See* Compl. § III.)  Chapter 41 encompasses six subchapters spanning 15 U.S.C. §§ 1601–1693r.  The Court, accordingly, assumes as Defendant did, that Plaintiff's first and sixth claims are being brought pursuant to the specific statutory provisions of the TILA identified in the Complaint.  Plaintiff's seventh claim for "Violation of Notice of Rescission," by contrast, is identified clearly as arising under 15 U.S.C. § 1635 and will be analyzed as such.

758928, at *8 (N.D. Tex. Jan. 25, 2024), *report and recommendation adopted*, 2024 WL 758536 (N.D. Tex. Feb. 22, 2024) (recommending plaintiff be denied leave to amend where amount plaintiff financed to purchase car was $52,648.30 because the TILA does not apply where the amount financed exceeds $50,000 and the transaction did not fit into specified categories) (collecting cases)).

Regardless, Plaintiff's TILA claims fail on the merits.  Congress enacted the TILA "to assure a meaningful disclosure of credit terms" and "to protect the consumer against inaccurate and unfair credit billing and credit card practices."  15 U.S.C. § 1601(a). Pursuant to 15 U.S.C. § 1632, a creditor must disclose the amount of any "finance charge" clearly and conspicuously to the consumer.  *See* 15 U.S.C. § 1632(a).  Section 1605 defines a "finance charge" as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit."  15 U.S.C. § 1605(a).  Section 1605(a) continues by providing "[e]xamples of charges which are included in the finance charge," including "[b]orrower-paid mortgage broker fees paid directly to the broker or the lender (for delivery to the broker) whether such fees are paid in cash or financed."  *Id.* § 1605(a)(6).

As to the down payment, the TILA expressly contemplates that a down payment may be made and requires lenders to disclose accurately the "amount financed," which is calculated first by "tak[ing] the principal amount of the loan or the cash price less downpayment and trade-in[.]"  15 U.S.C. § 1638(a)(2)(A)(i).  Plaintiff fails to allege any facts from which the Court could discern how Defendant violated any disclosure obligations imposed by Section 1605 by requiring a down payment.  *See Wepsic v. Josephson*, 231 B.R. 768, 771 (Bankr. S.D. Cal. 1998) (explaining that the TILA is "a disclosure statute . . . requiring the accurate and uniformly computed disclosures of the critical elements" of a consumer loan); *see also Marshall v. Mechanics Bank Auto Fin.*, No. 22-cv-6973, 2023 WL 2628674, at *4 (C.D. Cal. Feb. 15, 2023) ("No set of facts would support Plaintiff's claim that down payments are per se illegal under the Truth in Lending Act."); *Butler v. Global Lending Servs.*, No. 22-cv-1938, 2023 WL 4948312, at *6 (D. Md.

Aug. 3, 2023) ("Plaintiff points to no law or facts to support her view that Global Lending could not impose a finance charge on her auto loan, because she made a cash down payment to purchase her vehicle."); *Washington v. Pac. Credit Exchange*, No. 21-cv-2374, 2021 WL 5868981, at *4 (N.D. Cal. Nov. 17, 2021), *report and recommendation adopted*, 2021 WL 5865531 (N.D. Cal. Dec. 10, 2021) (dismissing with prejudice claim brought pursuant to Section 1605 because plaintiff, who was party to car loan, "misconstrue[ed] a statute that merely defines the term 'finance charge,' 15 U.S.C. § 1605(a), as instead imposing substantive obligations to return a down payment and provide insurance"); *Parker v. Bridgecrest Credit Co., LLC*, No. 21-cv-1628, 2021 WL 4137581, at *3 (D. S.C. Sept. 10, 2021) (dismissing claim under §1605 based on defendants' alleged taking of cash in a consumer credit transaction "with a finance charge involved" where plaintiff had entered into retail installment sales contract to finance purchase of an automobile); *Clark v. Carvana*, No. 21-cv-1113, 2021 WL 2478570, at *3 (N.D. Ga. Apr. 28, 2021) ("[A]s for Clark's claim based on § 1605 that defendants took cash in a consumer credit transaction in which a finance charge was involved, he does not elaborate on this claim or provide any facts in support, and his allegation is therefore insufficient to state a plausible claim for relief[.]" (cleaned up)).

Plaintiff's allegations that Defendant violated the TILA by failing to include car insurance in the "finance charge," (Compl. ¶ 9), and by requiring him to obtain car insurance, (*id.* ¶ 10), fare no better.[8]  Section 1605 provides that examples of charges included in the finance charge include, among other things, "premium or other charge for any guarantee or insurance protecting the creditor against the obligor's default or other credit loss."  15 U.S.C. § 1605(a)(5).  Section 1605(a)(5), however, "relates to credit insurance protecting Defendant against credit loss, not to car insurance."  *Johnson v. Local*

---

[8]   Plaintiff only identifies one provision of the TILA that Defendant allegedly has violated, 15 U.S.C. § 1605(b).  (*See* Compl. ¶¶ 9–10.)  Out of an abundance of caution, the Court considers other provisions to which Plaintiff may be alluding as well.

*Gov't Fed. Credit Union*, No. 22-cv-010, 2022 WL 1228216, at *2 (W.D.N.C. Apr. 26, 2022); *see also McMillan v. Templin*, No. 22-cv-1675, 2023 WL 3996477, at *9 (D. Md. June 14, 2023) (explaining that Section 1605(a)(5) "does not pertain to 'auto insurance,' which protects against *property* loss or damage"); *Smith v. Fussell*, No. 21-cv-3773, 2021 WL 9598413, at *2 (N.D. Ga. Sept. 22, 2021) ("Plaintiff's citation to the TILA's definition of a finance charge is perplexing because it is unclear how making a down payment and paying automobile insurance violates the Act."). Any reliance on this provision, accordingly, is misplaced.

Section 1605(b), which Plaintiff does cite, deals with "[c]harges or premiums for credit life, accident, or health insurance" included in a finance charge. 15 U.S.C. § 1605(b). Plaintiff, however, does not allege that Defendant improperly charged him for accident insurance in connection with his loan agreement. (*See generally* Compl.) Although Plaintiff alleges that he was required to obtain car insurance for the Tesla, he does not allege, and the Contract does not show, that he was required to purchase car insurance from Defendant. (*See* Compl. ¶¶ 9–10; Contract at 3, 5.) Nor does Plaintiff allege, or the Contract show, that Plaintiff actually obtained such insurance from Defendant. (*See* Compl. ¶¶ 9–10; Contract at 3, 5.) Indeed, the Contract indicates that Plaintiff elected not to obtain insurance from Carvana and that the price of the Tesla did not include any insurance options, let alone the type to which Section 1605(b) applies. (*See* Contract at 3 (indicating "N/A" as to offered insurance options)); *see also Ishmael v. GM Fin., Inc.*, No. 22-cv-1095, 2022 WL 2073821, at *4 (E.D. Pa. June 9, 2022) (concluding plaintiff failed to state a claim for violation of § 1605(b) where plaintiff alleged that defendant should have disclosed that insurance should have been included in finance charge); *McCoy v. Merck Sharp & Dohme Fed. Credit Union*, No. 21-cv-4550, 2022 WL 138071 (E.D. Pa. Jan. 14, 2022) (rejecting plaintiff's § 1605(b) claim where complaint did not allege plaintiff purchased insurance from defendant or that defendant charged plaintiff for insurance improperly). As such, Plaintiff cannot sustain a claim for violation of § 1605(b).

24-CV-236 TWR (DEB)

The Court infers, rather, that Plaintiff meant to bring a claim under § 1605(c), which concerns property insurance.  Section 1605(c) provides that any insurance "against loss of or damage to property"—car insurance—must be included in the finance charge "unless a clear and specific statement in writing is furnished by the creditor . . . setting forth the cost of the insurance if obtained from or through the creditor, and stating that the person to whom the credit is extended may choose the person through which the insurance is obtained."  15 U.S.C. § 1605(c).  Federal regulations expounding on the TILA clarify that "premiums for insurance against loss of or damage to property, or against liability arising out of the ownership or use of property[,] may be excluded from the finance charge if the insurance coverage may be obtained from a person of the consumer's choice, and this fact is disclosed."  *Pickett v. All In Credit Union*, No. 22-cv-75, 2022 WL 18276701, at *4 (S.D. Ala. Dec. 13, 2022) (citing 12 C.F.R. § 226.4(d)(2)) (collecting cases), *report and recommendation adopted*, 2023 WL 173620 (S.D. Ala. Jan. 12, 2023); *see also* 12 C.F.R. § 1026.4(d)(2).  Additionally, "a creditor may reserve the right to refuse to accept, for reasonable cause, an insurer offered by the consumer."  *Id.*  Here, the Contract expressly provides that:

> NOTICE. No person is required as a condition precedent to financing the purchase of an automobile that any insurance be negotiated or purchased through a particular insurance agent or broker.
> You must insure the vehicle and other property securing this Contract.
> . . .
> UNLESS A CHARGE IS INCLUDED IN THIS AGREEMENT FOR PUBLIC LIABILTIY OR PROPERTY DAMAGE INSURANCE, PAYMENT FOR SUCH COVERAGE IS NOT PROVIDED BY THIS AGREEMENT.
> . . .
> You may buy the required Property Insurance from any company reasonably acceptable to us.

(Contract at 3; *see also* Contract at 5 ("You may purchase or provide the [property] insurance through any insurance company reasonably acceptable to us.").)  Plaintiff, who expressly elected not to obtain insurance through Carvana (*see* Contract at 3, 5), fails to

allege specifically how this provision—or any other provision—of the Contract violates Section 1605(c) and its related regulations.  (*See generally* Complaint.)  As such, the Court concludes that Plaintiff has not plausibly alleged a violation of Sections 1605(a)(5), 1605(b), or 1605(c).  *See, e.g.*, *McMillan*, 2023 WL 3996477, at *9; *Pickett*, 2022 WL 18276701, at *4 ("Because the contract here allowed Plaintiff to furnish the insurance through anyone he chose, the premium was properly excluded from the finance charge."); *Redmond v. Calavan Chrysler Dodge Jeep Ram*, No. 21-cv-180, 2021 WL 7708418, at *3 (N.D. Ga. Oct. 4, 2021), *report and recommendation adopted*, 2021 WL 7708535 (N.D. Ga. Oct. 27, 2021) ("[I]t is unclear how defendant's request that plaintiff prove he maintains automobile insurance before purchasing the vehicle or its limitation on the amount of down payment accepted via credit card violates the Act.").

Finally, the Court notes that a plain reading of the Contract makes clear that Carvana disclosed all credit terms for Plaintiff's auto loan, including the finance charge, when Plaintiff executed the Contract.  (*See* Contract at 1; *see also* Compl., Ex. 2.)  The Contract discloses under the "Truth-in-Lending Disclosure" heading a finance charge, "The dollar amount the credit will cost you," of $17,908.33.  (*See* Contract at 1; *see also* Compl., Ex. 2.)  Given this further evidence, Plaintiff has not stated a plausible claim under the TILA.  The Court, therefore, **DISMISSES** Plaintiff's first cause of action.

### 2. Plaintiff's Sixth Cause of Action for Violation of the TILA

Plaintiff next alleges that "Defendant willfully and knowingly failed to provide information about the finance charge components and Plaintiff's federal right to rescind within three days, violating 15 U.S. Code § 1611." (Compl. ¶ 11.)  Defendant argues that Section 1611 does not provide consumers with a private right of action.  (Mot. at 5–6.)  The Court agrees with Defendant.

Section 1611 imposes criminal penalties for "willful[] and knowing[]" TILA violations but does not provide a private right of action.  *See* 15 U.S.C. § 1611; *see also McDonald v. JP Morgan Chase Bank N.A.*, No. 12-cv-860, 2012 WL 1714168, at *3 (S.D.

Cal. May 15, 2012) ("TILA section 1611 is a criminal provision, which does not provide a private right of action."). Plaintiff's sixth cause of action is, accordingly, **DISMISSED**.

           3.    <u>Plaintiff's Seventh Cause of Action for Violation of 15 U.S.C. § 1635 of the TILA</u>

       Plaintiff alleges that Defendant violated 15 U.S.C. § 1635 and 12 C.F.R. § 1026.23 by failing to notify or provide Plaintiff with information or forms related to his right to rescind the Contract. (*See* Compl. ¶¶ 6–7.) Defendant argues that Plaintiff has failed to state a claim pursuant to either provision because those provisions apply only to residential mortgages, not to auto loans. (*See* Mot. at 4.) The Court, again, agrees with Defendant. Section 1635 facially applies only to loans where a security interest "is or will be retained or acquired in any property which is used as the *principal dwelling* of the person to whom credit is extended" and does not apply to the car loan at issue. 15 U.S.C. § 1635(a) (emphasis added); *see also* 12 C.F.R. § 1026.23(a)(1) ("In a credit transaction in which a security interest is or will be retained or acquired in a consumer's *principal dwelling*, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction[.]" (emphasis added)). Because the consumer transaction Plaintiff seeks to rescind is an automobile financing contract with no alleged connection to his principal dwelling, he cannot state a claim for relief under either §1635 or 12 C.F.R. § 1026.23. *See, e.g.*, *West v. Wells Fargo Auto*, No. 22-cv-4405, 2023 WL 199676, at *3 (E.D. Pa. Jan. 17, 2023) ("Courts routinely hold that the right to rescind under § 1635(a) does not apply to the purchase of motor vehicles."); *Amezcuz v. GM Fin.*, No. 21-cv-1081, 2022 WL 1843993, at *2 (C.D. Cal. Feb. 24, 2022) (explaining that § 1635 "does not apply to the automobile finance contract to which [the plaintiff] is a party"); *Washington*, 2021 WL 58689, at *4 ("His reliance on 15 U.S.C. § 1635 as requiring disclosure of rescission is similarly misguided, as that statute by its terms applies only to loans where a security interest is 'acquired in any property which is used as the principal dwelling of the person to whom credit is extended,' which does not apply to the car loan at

issue." (quoting 15 U.S.C. § 1635(a)).  In fact, the Contract explicitly provides that there is no right of rescission, as required by California law:

> THERE IS NO COOLING OFF PERIOD UNLESS YOU OBTAIN A CONTRACT CANCELLATION OPTION.
>
> California law does not provide for a "cooling off" or other cancellation period for vehicle sales. Therefore, you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or you wish you had acquired a different vehicle.

(Contract at 8); *see also* Cal. Civ. Code § 2982(r) (mandating the inclusion of this language in automobile sales finance contracts).

Accordingly, Defendant's Motion to dismiss Plaintiff's seventh cause of action is **GRANTED**.

## B.    Plaintiff's Second Cause of Action Based on the Fair Credit Reporting Act

Plaintiff purports to bring a claim pursuant to the FCRA, 15 U.S.C. § 1681, *et seq.*, but fails to allege clearly any facts pertaining to that claim.  (*See* Compl. ¶ 3, § III.)  As Defendant did, the Court instead considers the exhibits attached to Plaintiff's Complaint in analyzing whether Plaintiff has stated a claim for relief.

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007).  "[T]o this end, the [FCRA] sought to make 'consumer reporting agencies exercise their grave responsibilities [in assembling and evaluating consumers' credit, and disseminating information about consumers' credit] with fairness, impartiality, and a respect for the consumer's right to privacy." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (quoting 15 U.S.C. § 1681(a)(4) (alteration in original)).  Consumer reporting agencies collect data from "furnishers"—the sources of the credit information. *See id.*  The FCRA imposes additional duties on the furnishers. *See id.*  "Section 1681s-2 sets forth '[r]esponsibilities of furnishers of

information to consumer reporting agencies' delineating two categories of responsibilities." *Id.* at 1154 (quoting 15 U.S.C. § 1681s-2).  The first category of responsibilities concerns the duty "to provide accurate information," 15 U.S.C. § 1681s-2(a), but is enforceable only by federal or state agencies.  *Gorman*, 584 F.3d at 1154 (citing 15 U.S.C. § 1681s-2(d)).  The second category of responsibilities concerns the furnisher's duties upon notice of a dispute—"that is, when a person who furnished the information to a [consumer reporting agency] receives notice from the [consumer reporting agency] that the consumer disputes the information." *Id.* (citing 15 U.S.C. § 1681i(a)(2)).  "These duties arise only after the furnisher receives notice of dispute from a [consumer reporting agency]; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)." *Id.* (citing 15 U.S.C. § 1681s-2(b)(1)).  "The FCRA expressly creates a private right of action for willful or negligent noncompliance with its requirements." *Id.*  "However, §   1681s-2 limits this private right of action to claims arising under subsection (b), the duties triggered upon notice of a dispute from a [consumer reporting agency]." *Id.* (citing 15 U.S.C. § 1681s-2(c)).

Here, Plaintiff has not alleged that Defendant is a consumer reporting agency, so the Court assumes he is pursuing a claim against Defendant as a furnisher.  (*See generally* Compl.)  To state a plausible claim under the FCRA against a furnisher of credit information, a plaintiff must allege the following:

> (1) a credit reporting inaccuracy existed on plaintiff's credit report; (2) plaintiff notified the consumer reporting agency that plaintiff disputed the reporting as inaccurate; (3) the consumer reporting agency notified the furnisher of the alleged inaccurate information of the dispute; and (4) the furnisher failed to investigate the inaccuracies or further failed to comply with the requirements in 15 U.S.C. 1681s-2(b) (1)(A)-(E).

*Horvath v. JP Morgan Chase & Co.*, No. 21-cv-1665, 2022 WL 80474, at *6 (S.D. Cal. Jan. 7, 2022) (quoting *Hughes v. IQ Data Int'l Inc.*, No. 15-cv-5118, 2016 WL 7406993, at *2 (N.D. Cal. Dec. 22, 2016)).

Here, Plaintiff fails to include any facts supporting the elements of his FCRA claim in his Complaint. (*See generally* Compl.) He does attach a letter to his Complaint in which he states:

> At this time, I will also inform you that if your offices have reported invalidated information to any of the 3 major credit bureaus (Equifax, Experian, or Transunion) this action may constitute fraud under both Federal and State Laws. Due to this fact, if any negative mark is found on any of my credit reports by your company or the company you represent, I will not hesitate in bringing legal action against you and your client following: Violation of the Fair Credit Reporting Act, Violation of the Fair Debt Collection Practices Act, and Defamation of Character.

(ECF No. 1-2, Ex. 3.) He also encloses an "Identity Theft Report" he submitted to the Federal Trade Commission. (*Id.*) However, nowhere does Plaintiff claim to have submitted a notice of dispute to a consumer reporting agency. *See Gens v. Colonial Savings, F.A.*, No. 11-cv-5526, 2013 WL 4730283, at *6 (N.D. Cal. Sept. 3, 2013) ("The Federal Trade Commission is not a consumer reporting agency." (citing 15 U.S.C. § 1681a(p)); *Ollestad v. Kelley*, 573 F.2d 1109, 1111 (9th Cir. 1978) ("[T]he Federal Trade Commission, the agency charged with administering the FCRA, has concluded that federal agencies are not consumer reporting agencies within the meaning of the act."). Nor does Plaintiff claim that Defendant received notice of the dispute from a consumer reporting agency. (*See generally* Compl.; ECF No. 1-2, Ex. 3.) Because Defendant's duties under 15 U.S.C. § 1681s-2(b) are only triggered "after the furnisher receives notice of dispute from a [consumer reporting agency]," Plaintiff has failed to supply the Court with any facts that would support the inference that Defendant's duties were triggered. *See Gorman*, 584 F.3d at 1154 ("[N]otice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b).").

Accordingly, Defendant's Motion to dismiss Plaintiff's second cause of action for violation of the FCRA is **GRANTED**.

/ / /

/ / /

**C.     Plaintiff's Third Cause of Action Based on the Fair Debt Collection Practices Act**

As with his Fair Credit Reporting Act claim, Plaintiff purports to bring a claim pursuant to the FDCPA, 15 U.S.C. § 1692, *et seq.*, but fails to allege clearly any facts pertaining to that claim.  (*See* Compl. ¶ 3, § III.)  The Court again considers the exhibits attached to Plaintiff's Complaint in analyzing whether Plaintiff has stated a claim for relief.

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors . . . and to promote consistent state action to protect consumers against debt collection abuses."  15 U.S.C. § 1692.  To state a claim under the FDCPA, "a plaintiff must establish that (1) the plaintiff is a consumer, (2) who was the object of a collection activity arising from a debt, (3) the defendant is a debt collector, and (4) the defendant violated a provision of the FDCPA."  *Marshall*, 2023 WL 2628674, at *3 (quoting *Munoz v. Cal. Bus. Bureau, Inc.*, No. 15-cv-1345, 2016 WL 6517655, at *4 (E.D. Cal. Nov. 1, 2016)).  The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt."  15 U.S.C. § 1692a(3).  Broadly, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  A defendant must "attempt to collect debts owed *another* before [the defendant] can ever qualify as a debt collector" under the FDCPA.  *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 87 (2017) (emphasis in original).

Here, Defendant assumes that Plaintiff's purported "Debt Validation Letter," which he attached to the Complaint, forms the basis of his FDCPA claim.  (*See* Mot. at 7–8; ECF No. 1-2, Ex. 3.)  In the Debt Validation Letter, Plaintiff advises Defendant that he is disputing the claim appearing on his credit report and seeks evidence of any debt owed to Defendant.  (*See* ECF No. 1-2, Ex. 3.)  The Court notes that Plaintiff references the FDCPA in several other exhibits to his Complaint, including in two notices to cease and desist (ECF No. 1- 2, Exs. 2, 3) and a "Notice of Fault and Opportunity to Cure" (ECF No. 1-2, Ex. 6).

First, none of these exhibits evidence that Defendant engaged in any debt collection efforts related to Plaintiff's debt under the Contract because the communications all are from Plaintiff to Defendant.  Plaintiff neither identifies any alleged communication from Defendant in the Complaint nor attaches any such communication for the Court's consideration.  (*See generally* Compl., ECF No. 1-2.)  Second, Plaintiff has not alleged sufficient facts from which the Court could infer that Defendant is a "debt collector" within the meaning of the FDCPA.  *See Mims*, 2024 WL 758928, at *9 (rejecting FDCPA claim where plaintiff alleged "insufficient (if any) facts in the complaint to plausibly allege that any defendant undertook the role of 'debt collector'—which 'is fatal to [the] FDCPA claims.'" (quoting *Bent v. Mackie Wolfe Zientz & Mann, P.C.*, No. 13-cv-2038, 2013 WL 4551614, at *3 (N.D. Tex. Aug. 28, 2013)).  Moreover, to the extent Defendant is a creditor collecting its own debt, Defendant would not qualify as a "debt collector" for purposes of the FDCPA.  *See Henson*, 582 U.S. at 87; *see also Parker*, 2021 WL 4137581, at *2 (adopting magistrate judge's report and recommendation to dismiss plaintiff's FDCPA claim because Bridgecrest was creditor collecting its own debts and, thus, was not a "debt collector" under the FDCPA); *Clark*, 2021 WL 2481893, at *3 (recommending dismissal of FDCPA claim where plaintiff "totally omit[ted] any factual content that would enable the [c]ourt to infer that [Carvana and Bridgecrest] qualify as debt collectors"); *Tu v. Camino Real Chevrolet*, No. 12-cv-9456, 2013 WL 140278, at *2 (C.D. Cal. Jan. 9, 2013) (concluding defendant in the business of accepting assignments of installment sales contracts from automobile dealerships was not a debt collector under the FDCPA); *Marlin v. Chase Cardmember Servs.*, No. 09-cv-192, 2009 WL 2043014, at *2 (E.D. Cal. July 13, 2009) ("[C]reditors who collect on their own debt and in their own name are not 'debt collectors' and are not subject to the FDCPA.").  Finally, Plaintiff fails to identify a single specific provision of the FDCPA that Defendant allegedly violated.  (*See generally* Compl.)

Accordingly, Defendant's Motion to dismiss Plaintiff's third claim for violation of the FDCPA is **GRANTED**.

### D.    Plaintiff's Fourth Cause of Action for Breach of Contract

Defendant argues that Plaintiff's breach of contract claim suffers from the same defect as his FCRA and FDCPA claim—namely, that he fails to plead any factual allegations related to this claim. (*See* Mot. at 8; Compl. § III.) As before, the Court agrees.

In California, to state a claim for breach of contract, a plaintiff must allege: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). While the Court presumes that Plaintiff intends to state a claim based on the Contract, the attachments to the Complaint do not elucidate Plaintiff's grounds for bringing a breach of contract claim. (*See generally* ECF No. 1-2.) As the Court cannot "supply essential elements of claims that were not initially pled," *Ivey*, 673 F.2d at 268, Plaintiff's fourth cause of action for breach of contract is **DISMISSED**.

### E.    Plaintiff's Fifth Cause of Action for Fraudulent Inducement

Defendant argues that Plaintiff likewise fails to allege any facts in support of his fraudulent inducement claim. (*See* Mot. at 8–9.) The Court once again agrees.

"The elements of fraud are (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Hinesley v. Oakshade Town Ctr.*, 135 Cal. App. 4th 289, 294 (2005). Fraud in the inducement is a "subset of the tort of fraud" that "occurs when the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable." *Id.* (internal quotation marks omitted) (quoting *Rosenthal v. Great W. Fin. Securities Corp.*, 14 Cal. 4th 394, 415 (1996)).

Here, Plaintiff claims that on September 19, 2022, he sent "a Copy of the Fraudulent TILA Security Agreement Page, and a Bill of Particulars in the amount of $45,716.66 to the Defendant[.]" (Compl. ¶ 16.) He does not, however, allege any facts that would permit the Court to infer that Plaintiff's consent to the Contract was procured by fraud. (*See generally* Compl.) Nor do the attachments to the Complaint elucidate Plaintiff's grounds

for bringing a fraudulent inducement claim.  (*See generally* ECF No. 1-2.)  As such, Plaintiff's fraudulent inducement claim fails to state a claim as a matter of law and fails to satisfy Federal Rule of Civil Procedure 9(b), which requires that Plaintiff plead fraud "with particularity"—i.e., "the who, what, when, where, and how of the misconduct charged," *Kearns*, 567 F.3d at 1124.

Accordingly, Plaintiff's fifth cause of action for fraudulent inducement is **DISMISSED**.

## III.    Leave to Amend

The district court should grant leave to amend if it appears "at all possible that the plaintiff can correct the defect," unless the court determines that "the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc) (citing *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990)).

Because Plaintiff's claims are legally frivolous—a fact he apparently concedes by failing to oppose the instant Motion—the Court will not allow Plaintiff leave to amend. *See Lopez*, 203 F.3d at 1130–31; *see also, e.g.*, *Mims*, 2024 WL 758928, at *7–9 (recommending dismissal with prejudice where amendment of TILA and FDCPA claims would be futile); *Butler*, 2023 WL 4948312, at *6–7 (dismissing TILA and FDCPA claims without leave to amend); *McMillan*, 2023 WL 3996477, at *11 (dismissing TILA, FDCPA, and FCRA claims without leave to amend); *Amezcuz*, 2022 WL 1843993, at *3 (dismissing without leave to amend TILA and FDCPA claims as "both factually and legally deficient"); *Redmond*, 2021 WL 7708418, at *3 (dismissing with prejudice legally frivolous TILA claims); *Pickett*, 2022 WL 18276701, at *5 (recommending dismissal with prejudice of similar TILA claims).

/ / /

/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's Motion to Dismiss **WITH PREJUDICE**. The Clerk of Court **SHALL** close the file.

**IT IS SO ORDERED.**

Dated: September 5, 2024

Honorable Todd W. Robinson
United States District Judge

24-CV-236 TWR (DEB)